**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Brian Azzarello,<br><br>　　　　　　Petitioner,<br><br>vs.<br><br>Commissioner of Social Security Administration,<br><br>　　　　　　Defendant. | No. CV-20-01399-PHX-SPL<br><br>**ORDER** |

Petitioner Brian Azzarello seeks judicial review of the denial of his application for disability insurance benefits under the Social Security Act, 42 U.S.C. § 405(g). (Doc. 1). Petitioner argues the Administrative Law Judge ("ALJ") erred by (1) rejecting his symptom testimony and (2) rejecting the treating providers' assessments. (Doc. 24 at 1–2). He seeks a remand for benefits, or in the alternative, a remand for further proceedings. (Doc. 18 at 29–30).

Before the Court is Petitioner's Complaint (Doc. 1), Opening Brief (Doc. 24), Defendant Commissioner of Social Security's Answering Brief (Doc. 30), Petitioner's Reply Brief (Doc. 34), and the Administrative Record (Doc. 14) (henceforth "R."). Because the Court finds no legal error on the part of the ALJ, it will affirm the Social Security Administration's decision.

**I.     BACKGROUND**

Petitioner filed an application for Title II disability insurance benefits on June 2, 2017, alleging disability beginning April 11, 2017. (R. at 19). The Social Security

1 Administration initially denied the claim on October 23, 2017, and again after
2 reconsideration on April 23, 2018. (R. at 19). Plaintiff requested a hearing in front of an
3 ALJ, which was held on April 29, 2019. (R. at 19). The ALJ denied Petitioner's request on
4 May 20, 2019. (R. 16–40) Petitioner requested reconsideration of the ALJ's determination,
5 which was denied on May 15, 2020. (R. at 1–6).

The ALJ found Petitioner had a "severe" impairment of "human immunodeficiency virus (HIV) infection with chronic fatigue; migraine headaches; and right knee pain with preserved strength and normal range of motion." (R. at 22) (emphasis omitted). The ALJ found Petitioner was capable of medium work, and that he could

> continually lift/carry up to 20 pounds, frequently lift/carry 21-50 pounds, and occasionally lift/carry 51-100 pounds. He can sit for 8 hours, stand for 8 hours, and walk for 8 hours of an 8-hour workday. The claimant can continuously reach, handle, finger, feel, push/pull, operate foot controls, climb, balance, stoop, kneel, crouch, and crawl. In addition, he can have frequent exposure to loud noise. The claimant can sort, handle, and use paper-files.

(R. at 24). The ALJ found the opinion of the state agency consulting doctors "probative and persuasive." (R. at 23). He found the state examining physician, who opined there were "mild functional limitations, with the exception of moderate difficulties responding appropriately to usual work settings and to changes in routine work settings," "somewhat persuasive.'" (R. at 23). The ALJ discredited Petitioner's testimony regarding the severity of his symptoms. (R. at 25). The ALJ rejected the testimony of the treating primary care physician because Petitioner's admitted abilities were greater than those she outlined. (R. at 28). The ALJ rejected the testimony of the treating neurologist because her opinions relied heavily on subjective complaints and were unsupported by the medical record. (R. at 28).  A vocational expert testified that Petitioner could perform work as a general office clerk, photocopy machine operator, and office helper. (R. at 30). The ALJ concluded Petitioner was not disabled from the alleged onset date to the date of the hearing. (R. at 30).

Petitioner alleges the ALJ erred by improperly rejecting his testimony and the

treating providers' assessments. (Doc. 24 at 1–2).

## II.  LEGAL STANDARDS

A person is considered "disabled" for the purpose of receiving social security benefits if he is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Social Security Administration's decision to deny benefits should be upheld unless it is based on legal error or is not supported by substantial evidence. *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008). "Substantial evidence is more than a mere scintilla but less than a preponderance." *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005) (citation omitted). "Where evidence is susceptible to more than one rational interpretation, the ALJ's decision should be upheld." *Trevizo v. Berryhill*, 871 F.3d 664, 674–75 (9th Cir. 2017) (quoting *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005)).

The Court "must consider the entire record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion, and may not affirm simply by isolating a specific quantum of supporting evidence." *Id.* at 675. The Court reviews "only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which [she or] he did not rely." *Id.* The Court will not reverse for an error that is "inconsequential to the ultimate nondisability determination" or where the ALJ's "path may reasonably be discerned, even if the [ALJ] explains [his] decision with less than ideal clarity." *Treichler v. Comm'r of Soc. Sec.*, 775 F.3d 1090, 1099 (9th Cir. 2014) (citing *Alaska Dept. of Envtl. Conservation v. E.P.A.*, 540 U.S. 461, 497 (2004)). The Court must "look at the record as a whole to determine whether the error alters the outcome of the case." *Solomon v. Comm'r of Soc. Sec. Admin.*, 376 F. Supp. 3d 1012, 1016 (D. Ariz. 2019) (quoting *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012), *superseded by regulation on other grounds*). If the error did not alter the outcome, it is harmless. *Id.*

## III. DISCUSSION

### A. Petitioner testimony

In evaluating a claimant's testimony, the ALJ is required to engage in a two-step analysis. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). First, the ALJ must decide whether the claimant has presented objective medical evidence of an impairment reasonably expected to produce some degree of the symptoms alleged. *Id*. If the first test is met and there is no evidence of malingering, the ALJ can reject the testimony regarding the severity of the symptoms only by providing specific, clear, and convincing reasons for the rejection. *Id*. The reasons must be supported by substantial evidence. *Garrison*, 759 F.3d at 1014–15. The ALJ need not engage in "extensive" analysis but should, at the very least, "provide some reasoning in order for [a reviewing court] to meaningfully determine whether [his] conclusions were supported by substantial evidence." *Brown-Hunter v. Colvin*, 806 F.3d 487, 495 (9th Cir. 2015) (internal citations omitted). Importantly, the ALJ "cannot reject a claimant's subjective pain or symptom testimony simply because the alleged severity of the pain or symptoms is not supported by objective medical evidence." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1040 n. 11 (9th Cir. 2007) (citing *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998)).

Petitioner argues the ALJ erred in rejecting his subjective symptom testimony because the ALJ found his medically determinable impairments could reasonably be expected to cause the alleged symptoms but found the severity of the symptoms was unsupported by the medical record, which Petitioner argues is a legal error. (Doc. 24 at 15–17). Petitioner argues the ALJ further erred by rejecting his testimony because of the effectiveness of treatment and because his providers noted he was in no "acute distress" during his appointments. (Doc. 24 at 19–20). Finally, Petitioner argues the daily activities the ALJ cited to in rejecting his testimony were not clear and convincing reasons to reject the testimony. (Doc. 24 at 20). Defendant argues the ALJ did not err, because substantial evidence supports the ALJ's findings: the subjective complaints were not supported by the medical records, treatment has been effective, and Petitioner's activities supported the level

4

of activity assessed, which the ALJ noted. (Doc. 30 at 6–7).

The ALJ found Petitioner's "medically determinable impairments could reasonably be expected to cause the alleged symptoms" but concluded his statements as to the intensity, persistence, and limiting effects of those symptoms were "not entirely consistent with the medical evidence and other evidence in the record." (R. at 25). There was no finding of malingering. Thus, the Court looks to see whether the ALJ provided appropriate reasoning for rejecting the testimony.

The ALJ found Petitioner's testimony to be inconsistent with the severity of his conditions shown in his medical records for the following reasons: the "objective findings, diagnostic studies, treatment modalities, and treatment record" show his limitations are not debilitating; treatment has been successful; his providers observed him to be "in no acute distress;" and his daily activities do not support his allegations of severity. (R. at 25–26).

1. *Petitioner's medical records*

The Ninth Circuit has held that "once the claimant produces objective medical evidence of an underlying impairment, [the ALJ] may not reject a claimant's subjective complaints based solely on a lack of objective medical evidence to fully corroborate the alleged severity of pain." *Burch*, 400 F.3d at 680 (citing *Bunnell v. Sullivan*, 947 F.2d 341, 345 (9th Cir. 1991)). However, the ALJ may consider medical evidence as one factor in the credibility analysis. *Burch*, 400 F.3d at 681.

As outlined above, the ALJ found Petitioner's medical records support a finding of severe impairment due to chronic fatigue associated with HIV infection, migraine headaches, and right knee pain. (R. at 22). The ALJ specifically cited to Petitioner's treatment notes from his infectious disease specialist, progress notes from his neurologist, X-rays and MRIs of his knee, specialist notes, and physical examinations that that supposedly show his condition is not as severe as he claims. (R. at 25–26, 537–93, 665–78, 746, 827–75, 921, 931–33, 960, 961, 975, 978, 1003–05, 1008–11, 1025–52). The records the ALJ cites contain contradictions; Petitioner's CD4 count increased over time, which indicates higher immune functioning, but the treatment notes also show his fatigue

worsened. (R. at 537–93, 665–78, 827–75, 921, 931–32, 960–61, 1003–05, 1025–51). The treatment for his headaches appears somewhat successful in managing the symptoms. (R. at 746, 933, 1008–11, 1028, 1043, 1049, 1052). The records also show his knee had minimal degenerative change, but treatment for the pain did not help. (R. at 941–57, 962–92, 1003, 1053–55).

When there are conflicts within the record, it is the ALJ's responsibility to resolve them. *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1164 (9th Cir. 2008) (citing *Benton v. Barnhart*, 331 F.3d 1030, 1040 (9th Cir. 2003)). Here, the ALJ has determined the records show Petitioner's subjective complaints are overblown. (R. at 25–26) However, as stated, the ALJ's credibility determination cannot rely on consistency or inconsistency with the medical records alone, so the Court must turn to the other factors the ALJ cited. *See Lingenfelter*, 504 F.3d at 1040.

### 2. *Petitioner's course of treatment*

The ALJ may consider the effectiveness of medication and treatments. 20 C.F.R. §§ 404.1529(c)(3)(iv)–(v); *Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006) ("Impairments that can be controlled effectively with medication are not disabling."). When a claimant responds "favorably" to conservative treatment the ALJ may discount his testimony about the severity of the condition. *Tommasetti v. Astrue*, 533 F.3d 1035, 1039–40 (9th Cir. 2008) (citing *Parra v. Astrue*, 481 F.3d 742, 750–51 (9th Cir. 2007) and *Meanel v. Apfel*, 172 F.3d 1111, 1114 (9th Cir. 1999)).

As mentioned above, the ALJ cited medical records showing treatment for Petitioner's migraines helped with pain and frequency. (R. at 933, 1008–11, 1052). The specific treatments were as follows: nasal spray (R. at 933, 1052); Imitrex tablets (R. at 1052); and Emgality. (R. at 1052). The Court finds the ALJ did not err when he found these effective, conservative treatments did not corroborate Petitioner's allegations of debilitating migraines.

### 3. *Physician observations and treatment notes*

Petitioner argues that the ALJ improperly relied on treatment notes from his treating

providers that stated he "appeared 'physically fit'" and was not in "acute distress" at his appointments. (Doc. 24 at 19–20). The ALJ provided cites to several instances in which Petitioner's medical providers noted he appeared to be feeling fine overall. (R. at 26, 537–93, 823–75, 885, 956–61, 1015–20, 1040–42, 1048–51). The ALJ's summary of contradicting evidence in the record is sufficient to find Plaintiff's subjective testimony incredible. *See, e.g., Belcher v. Berryhill*, 707 F. App'x 439 (9th Cir. 2017). The ALJ did not err on this point.

    4.  *Petitioner's daily activities*

"Engaging in daily activities that are incompatible with the severity of symptoms alleged can support an adverse credibility determination." *Ghanim v. Colvin*, 763 F.3d 1154, 1165 (9th Cir. 2014). "While a claimant need not vegetate in a dark room in order to be eligible for benefits, the ALJ may discredit a claimant's testimony when the claimant reports participation in everyday activities indicating capacities that are transferable to a work setting[.]" *Parsons v. Colvin*, 111 F. Supp. 3d 1009, 1018 (D. Ariz. 2015) (internal quotation omitted). "[T]he ALJ may discredit the claimant's allegations upon making specific findings relating to those activities." *Burch*, 400 F.3d at 681.

The ALJ discredited Petitioner's testimony due to his daily activities. (R. at 26). He lives alone, cares for his own personal hygiene and grooming needs, prepares simple meals, cares for his dog, performs household chores, drives, goes out alone, shops, pays bills and manages finances, watches television, checks email, talks with family and friends on the phone and via text message, and eats at restaurants. (R. at 26).

"'Even' when daily 'activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment.'" *Morris v. Berryhill*, 358 F. Supp. 3d 875, 885 (D. Ariz. 2019) (quoting *Molina v. Astrue*, 674 F.3d 1104 (9th Cir. 2012) (superseded by regulation on other grounds)). The Court finds the ALJ did not err when he discredited Petitioner's testimony due in part to his daily activities, which suggest a high level of functioning independently.

**B. Physician opinions**

At issue are the opinions of the treating primary care physician and treating neurologist. The ALJ rejected the opinions of treating primary care physician Dr. Bhuyan and treating neurologist Dr. Pansing. (R. at 27–28). Treating physician's opinions are normally given "controlling weight," but they are not entitled controlling weight if the opinion is not "well-supported" or inconsistent with other substantial evidence in the record. *Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007) (citing 20 C.F.R. § 404.1527). If the treating physician's opinions are not entitled controlling weight, the Administration considers specific factors in determining the weight it will be given, including "length of the treatment relationship and the frequency of examination" by the treating physician; the "nature and extent of the treatment relationship" between the patient and the treating physician; the supportability of the opinion (whether there are lab findings or other medical signs); consistency with the record; and whether the treating physician specializes in the area at issue. § 404.1527(c).

> *i. Primary care physician Dr. Bhuyan*

The ALJ discounted Dr. Bhuyan's opinion because the records from her office were inconsistent with her final opinion and because she did not treat Petitioner for HIV and migraines but opined on them. (R. at 27–28). The ALJ also found Petitioner's abilities were greater than those found by Dr. Bhuyan and that Dr. Bhuyan "failed to provide an explanation of the evidence relied upon" in forming her opinion. (R. at 28).

In reviewing Dr. Bhuyan's notes, the Court finds they could be interpreted to support or contradict her findings that Petitioner could not sustain full-time employment. (R. at 27, 659–62, 665–78, 896–97, 931–32, 1003–05, 1025–39). It is clear Petitioner suffers from migraine headaches, but the degree to which they are disabling is questionable. "Where evidence is susceptible to more than one rational interpretation, the ALJ's decision should be upheld." *Trevizo*, 871 F.3d at 674–75 (quoting *Burch*, 400 F.3d at 679).

In reviewing Petitioner's activities, it appears to the Court his admitted abilities are about on-par with Dr. Bhuyan's assessment, however, the ALJ's error as to this point is

harmless because there are other legitimate reasons for rejecting Dr. Bhuyan's opinion.

                *ii.   Neurologist Dr. Pansing*

The ALJ discounted the treating neurologist's opinion because it was "inconsistent with her own treating record" and she did not address the inconsistency. (R. at 28). The ALJ stated the neurologist based her opinion more on Petitioner's subjective allegations than on the record. (R. at 28). In reviewing Dr. Pansing's notes, the Court finds they could be interpreted to support or contradict her findings. She notes Petitioner has frequent migraines but also notes improvement with medication. (R. at 933, 1052). As stated, when the evidence may be interpreted in more than one way, the Court must uphold the ALJ's decision. *See Trevizo*, 871 F.3d at 674–75 (quoting *Burch*, 400 F.3d at 679). Therefore, the ALJ did not err when he rejected Dr. Pansing's opinion.

### IV.   CONCLUSION

Because the Court finds the ALJ's rejection of Petitioner's testimony was accompanied by specific, clear, and convincing reasons supported by substantial evidence, and the physician opinions were inconsistent with other substantial evidence in the record, there can be no finding of legal error by the ALJ.

Therefore,

**IT IS ORDERED** that the final decision of the Commissioner of Social Security is **affirmed**.

**IT IS FURTHER ORDERED** that the Clerk of Court shall enter judgment accordingly and **terminate** this action.

Dated this 13th day of August, 2021.

Honorable Steven P. Logan
United States District Judge